IN the INTEREST OF T.M.J., a person under the age of 18: T.M.J., Petitioner,†

V.

STATE of Wisconsin, Respondent.

Court of Appeals

*No. 81–2267. Submitted on briefs March 1, 1982.—Decided November 23, 1982.*

(Also reported in 327 N.W.2d 198.)

† Petition to review denied.

For the petitioner the cause was submitted on the brief of *David C. Niblack,* state public defender; *William G. Retert,* first assistant state public defender, and *Garrett N. Kavanagh,* assistant state public defender.

For the respondent the cause was submitted on the briefs of *Charles Schneider,* assistant district attorney of Fond du Lac; *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. The main issue is whether a juvenile has the same full discovery right prior to the prosecutive merit portion of a waiver hearing that is afforded to a criminal defendant prior to trial. We hold that a juvenile does not have such a right and affirm.

At the outset, we note that this is a discretionary appeal. Because the issue is of statewide importance, we grant it.[1] For the same reason, this case is being decided by a three-judge panel, rather than as a one-judge appeal. *See* Rule 809.41(3), Stats. We also note that the decision in this case was delayed pending the decision of the supreme court. *In the Interest of T.R.B.,* 109 Wis. 2d 179, 325 N.W.2d 329 (1982), which has now been released. We finally point out that four other issues raised by the juvenile will also be decided *seriatim.*

Juvenile proceedings were commenced against T.M.J., then sixteen years old, charging him with first-degree murder, burglary and attempted burglary. The district attorney petitioned for waiver of the case alleging, *inter alia,* the substantial prosecutive merit, the seriousness of the offense and the lack of suitable services for treatment of T.M.J. within the juvenile system. Prior to the waiver hearing, T.M.J. presented a discovery demand to the district attorney, asserting authority to do so

[1] *State ex rel. A.E. v. Circuit Court for Green Lake County,* 94 Wis. 2d 98, 105d, 292 N.W.2d 114, 115 (1980) (on motion for reconsideration), urges the court of appeals to give careful consideration to granting leaves to appeal waivers of juveniles, although such waivers are nonfinal orders.

pursuant to secs. 48.293(2), 971.24(1) and 971.25(1), Stats. The district attorney refused to provide the information demanded, and T.M.J. brought on a motion to compel discovery. When the trial judge denied the motion, the waiver hearing proceeded. The state submitted relevant testimony and evidence at both the prosecutive merit and waiver portions of the hearing. The juvenile was ordered waived, and review of the order is now presented to this court. The first issue relates to the denial of the motion to compel discovery.

This issue is decided by focusing attention on sec. 48.-293, Stats., which we quote in full, as follows:

48.293 Discovery. (1) Copies of all peace officer reports, including but not limited to the officer's memorandum and witnesses' statements, shall be made available upon request to counsel or guardian ad litem *prior to a plea hearing.* The reports shall be available through the representative of the public designated under s. 48.09. The child, through counsel or guardian ad litem, is the only party who shall have access to the reports in proceedings under ss. 48.12, 48.125 and 48.13(12). The identity of a confidential informant may be withheld pursuant to s. 905.10.

(2) All records relating to a child which are relevant to the subject matter of a proceeding under this chapter shall be open to inspection by a guardian ad litem or counsel for any party, upon demand and upon presentation of releases where necessary, at least 48 hours before the proceeding. Persons entitled to inspect the records may obtain copies of the records with the permission of the custodian of the records or with permission of the court. The court may instruct counsel not to disclose specified items in the materials to the child or the parent if the court reasonably believes that the disclosure would be harmful to the interest of the child. *Sections 971.23 to 971.25 shall be applicable in all delinquency proceedings under this chapter except the court shall establish the timetable for s. 971.23(3) and (8).* [Emphasis added.]

The primary source of statutory construction is the language of the statute itself. *State v. Derenne,* 102 Wis. 2d 38, 45, 306 N.W.2d 12, 15 (1981). The emphasized portion of the cited statute states that, although peace officers reports may be discovered, such discovery may only take place prior to a plea hearing, and that items enumerated in the criminal discovery statutes, secs. 971.23 to 971.25, Stats., may be discovered in all delinquency proceedings. A waiver hearing precedes a plea hearing. *See* sec. 48.18(2), Stats. If a waiver petition has been filed, the plea hearing will only take place when and if the juvenile court decides to retain jurisdiction. Therefore, we read the statute to require that information contained in peace officer reports must be made available to the juvenile prior to a plea hearing but only if there is no petition for waiver on file or, if a waiver petition is on file, only if jurisdiction is retained following a waiver hearing.

Similarly, although we recognize that sec. 48.293(2), Stats., commands that the criminal discovery statutes shall be applicable to "all delinquency proceedings," our construction is that the waiver hearing is not part of a delinquency proceeding. It is the waiver hearing which determines whether a juvenile will be treated as an alleged delinquent child or as an adult criminal defendant in the first place. Once the determination is made and if the juvenile court retains jurisdiction, then, and only then, may delinquency proceedings take place. Therefore, if a waiver petition has been filed, then "delinquency proceedings" do not begin until the waiver hearing has taken place and jurisdiction has been retained.

Thus, we hold that the plain wording of sec. 48.293, Stats., provides no access to peace officer reports or broad discovery of the type envisioned under the criminal discovery statutes, secs. 971.23 to 971.25, Stats., prior to a waiver hearing.

Parenthetically, we cite *In the Interest of T.R.B.*, 109 Wis. 2d at 190, 325 N.W.2d at 334, which states:

We view the determination of prosecutive merit under sec. 48.18(4) as more functionally similar to the determination of probable cause in the preliminary examination . . . . Just as the court in the preliminary examination must determine that the state has sufficient evidence to bring a particular defendant to criminal trial, the juvenile court in determining prosecutive merit must determine that the state has sufficient evidence to compel the juvenile to be subjected to a criminal trial.

The *T.R.B.* court, then, views the prosecutive merit stage as having the same function as that of a preliminary examination. That being the case, it stands to reason that we should parallel the discovery rights of a juvenile prior to a hearing on prosecutive merit with the discovery rights of an adult criminal defendant prior to a preliminary examination.

In *State ex rel. Lynch v. County Court, Branch III*, 82 Wis. 2d 454, 465, 262 N.W.2d 773, 778 (1978), the supreme court addressed the question of discovery prior to a preliminary examination. The court said that "generalized inspection of the prosecution's files by the defense, at this early stage of a criminal prosecution, is inherently harmful to the orderly administration of justice." The court noted that the defendant's constitutional right to exculpatory material was bottomed upon the right to a fair *trial*. The court then reasoned that a preliminary examination is not a trial. Rather, it is a means by which to determine whether probable cause exists to believe a felony was committed and that the defendant probably committed the felony. The court further noted that the charges alleged at a preliminary examination are tentative and provisional. Since the ultimate charges are not determinable with certainty at this early stage, it would be difficult to determine which

materials, if any, would prove to be exculpatory at the time of trial. The court then concluded by declaring that:

Inspection of the state's files by the defense at this early stage, where there has been no showing of particularized need for inspection, can serve only as an opportunity for generalized, unrestricted discovery, rather than as a device for the constitutionally mandated disclosure of specific exculpatory material. Such discovery will impede the orderly processes of discovery prescribed by statute, *see:* secs. 971.23 to 971.25, Stats., and will circumvent the legislative determinations reflected in those statutes; will unjustifiably delay the administration of justice; and will needlessly complicate the relatively informal procedures applicable at this early stage of a prosecution. [Footnote omitted.]

*Id.* at 466, 262 N.W.2d at 779.

Similar reasoning prevails in deciding whether a juvenile may be allowed discovery at the prosecutive merit portion of the waiver hearing. The prosecutor must produce only that amount of information which will allow the juvenile court to decide that "the state has sufficient evidence to compel the juvenile to be subjected to a criminal trial." *T.R.B.,* 109 Wis. 2d at 190, 325 N.W.2d at 334. Therefore, inspection of the state's files would unnecessarily allow scrutinization of material not directly related to the limited information submitted by the state.

We take particular note that the juvenile should have no right to any material in the state's file that is not brought before the court. As stated in *In Interest of D.H. v. State,* 76 Wis. 2d 286, 301, 251 N.W.2d 196, 204 (1977):

The trial judge should require that the information *considered by him* [*or her*] be trustworthy, and the judge should allow the juvenile a reasonable opportunity to demonstrate that information *before him* [*or her*] is

inaccurate, unreliable, or the product of bias or animosity on the part of other persons. ⌊Emphasis added.⌋

Therefore, broad discovery would allow disclosure of information wholly unrelated to the facts presented to the judge. We conclude that to grant juveniles any greater discovery rights than those afforded criminal defendants would be untenable.

Our holding does not mean that a juvenile should be denied access to all records prior to the waiver hearing. Section 48.293 (2), Stats., allows inspection of social reports and records relating to the juvenile. While a juvenile is not allowed materials relating to the commission of the offense itself, materials relating to the juvenile's personality and past history are discoverable. The reason is that the court must consider these factors in deciding whether to order waiver, assuming prosecutive merit has been found. *See* sec. 48.18(5) (a), Stats. It is at this stage of the proceedings where the court makes final determinations of fact upon which the ultimate decision on waiver is based. It is adjudicatory in that it makes a final determination regarding the retention of jurisdiction in the juvenile court system, taking into account the best interests of the child and the public.

T.M.J. asserts, however, that the statutory construction we adopt is unconstitutional and contrary to our own decision in *In the Interest of D.E.D. v. State,* 101 Wis. 2d 193, 304 N.W.2d 133 (1981). In that case, we followed the dictates of the *D.H.* decision and observed that prosecutive merit can only be found upon reliable evidence. We also wrote that upon a juvenile's request, the juvenile court must evaluate the reliability of evidence. *D.E.D.,* 101 Wis. 2d at 199, 304 N.W.2d at 136–37. T.M.J. claims he cannot aptly demonstrate the unreliability of the evi-

dence to the juvenile court if access to the information needed to make such demonstration is denied. In particular, he argues he was unable "to question prosecution witnesses about any discrepancies or inconsistencies between their testimony and their previous statements or between their statements and known physical facts because defense counsel was not allowed to see the police reports or medical reports." He concludes that the denial violates his due process right to fundamental fairness.

T.M.J. misunderstands the nature of a reliability determination. We can best explain what is meant by testing reliability at the prosecutive merit portion by referring to *T.R.B.* *T.R.B.* states that while it is an open question whether petitions alone will suffice as evidence in a contested prosecutive merit hearing, they at least may be used as evidence. The *T.R.B.* court explains that:

[T]he legislature authorizes the admission of hearsay evidence at a waiver hearing if it has demonstrable circumstantial guarantees of trustworthiness. In order to be used as evidence, the petitions must have guarantees of trustworthiness. The allegations of delinquency must be based on the petitioner's personal observations, or if based on other than the petitioner's eyewitness observations, the petitions themselves must establish the reliability of the information on which the petitioner bases his or her belief.

*T.R.B.*, 109 Wis. 2d at 193, 325 N.W.2d at 336. We read the *T.R.B.* language to mean that when a petition is presented as evidence, its reliability may be attacked in the same manner as one would attack the reliability of a complaint. A criminal complaint is minimally adequate when it states who is charged, what the person is charged with, when and where the offense allegedly took place, why this particular person is being charged, and who says so, or how reliable is the informant. *State v. Hoffman*, 106 Wis. 2d 185, 198, 316 N.W.2d 143, 151–52 (Ct.

App. 1982). The last tier of the *Hoffman* criteria, asking who says so, presents a basis for testing the *reliability* of the complaint. Similarly, reliability of a petition is present when the same criteria are met. When we speak of a reliability determination in the prosecutive merit stage, we mean the very same thing; that is, the person "who says so" must be reliable.

By further analogy, thus, in testing the reliability of a criminal complaint, a claim of intentional misrepresentation by the complainant may obligate the trial court to conduct an immediate hearing so as to determine the truthfulness and materiality of the statements. *State v. Marshall*, 92 Wis. 2d 101, 112, 284 N.W.2d 592, 596–97 (1979). To merit such hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was made by the complainant or affiant, which statement was integral to the written complaint. *Id.; see also Franks v. Delaware*, 438 U.S. 154 (1978). Similarly, if a substantial preliminary showing can be made that the petitioner is untruthful and the information complained of is material to prosecutive merit, then, the trial judge is required to make a determination on the question of reliability prior to a finding of prosecutive merit.

We caution, however, as did the *Marshall* court, that the rule applicable to intentional misrepresentations applies only to misrepresentations made by a complainant, not a citizen witness or informant. *Marshall*, 92 Wis. 2d at 113, 284 N.W.2d at 597. The latter two categories of individuals are tested under what is commonly known as the *Aguilar* standard. That test requires that a complaint establish: (1) the underlying circumstances which show reason to believe the informant is credible, and (2) the underlying circumstances which show that the manner in which the informant reached his conclusions was

reliable. *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 79, 280 N.W.2d 751, 755 (1979) ; *see also Aguilar v. Texas,* 378 U.S. 108 (1964). When testing the reliability of a citizen informant, the search for reliability is further reduced to the second prong of the *Aguilar* test— from personal reliability to "observational" reliability— because of the difference in motivation and character existing between the paid informer and citizen informer. *Marshall,* 92 Wis. 2d at 114, 284 N.W.2d at 597–98. Once these two standards are satisfied on the face of the complaint, the defendant cannot collaterally attack it.

In the prosecutive merit stage, the same criteria apply. A juvenile cannot go behind the petition presented by the state's evidence and test reliability when the two-pronged *Aguilar* test is satisfied. The juvenile can be successful in obtaining a hearing on the petitioner's reliability only if a substantial preliminary showing is first made that the petitioner knowingly, intentionally or with reckless disregard, made a false statement. Further, if an informant has been mentioned in the petition as having given information helpful to the petition, then the juvenile can only attack the petition if there is a substantial preliminary showing that the *Aguilar* standard has been violated. This is what is meant by a test of reliability at the prosecutive merit stage; it is not a forum to examine the credibility of a witness. T.M.J.'s argument that he is unable "to question witnesses regarding discrepancies or inconsistencies" fails because that is not what is meant by a "reliability" determination at the prosecutive merit stage.

In this case, the juvenile offered no specific grounds disputing reliability and, in fact, did not request a separate hearing on reliability. Admissions were made by the juvenile and were included in the petition, signed by a police officer, which was part of the information given to the court. Yet, the juvenile never contended that his

statements were untrue and only claimed that his statements *might* have been involuntary. Therefore, it cannot be said that the petitioner police officer based his allegations upon a knowingly coerced confession. Further, the juvenile never requested an opportunity to testify before the juvenile court in order to claim that his admissions were false. Of equal importance, the admissions were corroborated by other evidence, such as the fact that a gun and shell box implicated in the crime were found where the juvenile stated he had left them; additionally, the juvenile's fingerprints are linked to the crime. We conclude that a proper basis for a finding of prosecutive merit existed.[2]

T.M.J. raises four unrelated issues. One is whether the petition failed to show "probable cause" that first-degree murder and attempted burglary were committed. The juvenile claims the petition fails to show both intent to murder and entry with intent to steal or commit a felony. When discussing "probable cause" in the petition, as opposed to probable cause at the prosecutive merit stage, we harken back to the six w's recently reiterated in *Hoffman.* We hold the petition is sufficient. The petition alleges that officers were called to the home of Maryls Fisher and found her body lying on the floor of the hallway leading to the master bedroom; she was dead of an obvious gunshot wound; a window on the northside of this ground floor master bedroom was broken by a gunshot from outside; there were shotgun

---

[2] We do not reach the question of whether discovery in a prosecutive merit setting may be had, if a substantial preliminary showing of unreliability is made. We note, however, that *State ex rel. Lynch v. County Court, Branch III,* 82 Wis. 2d 454, 466, 262 N.W.2d 773, 779 (1978), allows discovery at a preliminary hearing if "particularized need" has been shown. We can foresee, if reliability becomes a real issue, a trial court ordering discovery of certain related documents upon a finding of "particularized need."

pellets in the wall around her body and in the "partly open" door between the bedroom and the hall; her front door was quite damaged as if someone had kicked on it; a shotgun of a caliber similar to the one used to kill Mrs. Fisher was stolen in a burglary at a home about one-half mile west of her home, and T.M.J. is linked to that burglary by means of a fingerprint; T.M.J. admitted to police that he broke in the front door, stole the shotgun from the first home and went to the Fisher home where he kicked on the front door until a woman appeared and pushed against it from the inside; he then ran around to the back, raised the shotgun and fired through a back window. The petition avers that the juvenile raised the gun and shot into a bedroom window; that the blast struck and killed Mrs. Fisher in the doorway to her bedroom and that the juvenile knew she was there. These facts are sufficient to show that T.M.J. is charged; that he is charged with first-degree murder; that the offense took place at the Fisher home; that he is being charged because of his admissions and because documentary proof links him to the crime; and that the information in support of the petition comes from reliable sources. For purposes of showing that the charges are not merely capricious and that further proceedings are justified, the petition more than passes muster.

The allegation of burglary is also sufficient. The petition reads that the juvenile went to the Fisher home and began kicking at the front door in the same manner that he had broken into the first home where the shotgun had been stolen. It charges the juvenile with an intent to enter for the purpose of a similar burglary or other felony which ingress was halted only by Mrs. Fisher's appearance at the door and subsequent ill-fortune. As such, the petition states an adequate basis for the attempted burglary. We conclude that the arguments raising questions about the petition must fail.

Another issue is whether T.M.J. had a right to a psychiatric examination prior to the waiver hearing. T.M.J. claims that he has the right to present relevant testimony at the second portion of a waiver hearing. He alleges that the court failed to allow a current psychological evaluation, thereby preventing him from offering possibly relevant information. T.M.J. is correct that he may present relevant testimony. *In Interest of D.H. v. State,* 76 Wis. 2d at 301, 251 N.W.2d at 204. He is also correct that the juvenile court judge must consider the personality and prior record of the child, including whether the child is mentally ill or developmentally disabled. Sec. 48.18(5)(a), Stats. It does not follow, however, that a psychiatric examination must be given merely upon the juvenile's request. Section 48.295(1), Stats., discusses the discretionary nature of the decision, providing in part:

(1) After the filing of a petition and upon a finding by the court that reasonable cause exists to warrant an examination, the court may order any child coming within its jurisdiction to be examined as an out-patient by a physician, psychiatrist or licensed psychologist, . . . in order that the child's physical, psychological, mental or developmental condition may be considered.

Discretion was properly exercised here. The juvenile failed to provide any basis for ordering a psychiatric examination. Additionally, the juvenile court had the opportunity to observe the juvenile in court during the full day's proceedings. The court could have adjourned the hearing had it been considered necessary. Also, the court did consider the written evaluations of a psychologist, which were in the juvenile's court file because of prior delinquency proceedings. We conclude there was no abuse of discretion since the failure to provide an examination is based on logical rationale reasonably de-

rived from the record. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977).

Next, T.M.J. claims he was illegally arrested in his bedroom because of an invalid warrant. He argues, therefore, that the court was without personal jurisdiction over him. We need not decide this issue because T.M.J. only alleges that the affidavit in support of the warrant was false. He does not state in what manner it is false. We deem the issue waived because proper argument has not been made. *Balen v. Franklin,* 25 Wis. 2d 246, 256, 130 N.W.2d 747, 752 (1964).

Finally, T.M.J. argues that he should not have been waived even if there was a finding of prosecutive merit. The argument has no substance. He is alleged to have committed a burglary and an attempted burglary at two of the same homes he had burglarized previously; he is also alleged to have murdered a woman, all within six weeks of release from Lincoln Hills Boys Home. He was living in a specialized treatment foster home at the time of the alleged crimes. The juvenile court considered this and all the other necessary criteria and found, by clear and convincing evidence, that it was contrary to the best interests of the child and the public to retain jurisdiction. We concur.

*By the Court.*—Nonfinal order affirmed.