IN the INTEREST of J.G., alleged delinquent child under the age of 18: J.G., Appellant,

v.

STATE of Wisconsin, Respondent-Petitioner.

Supreme Court

*No. 83–266. Argued March 26, 1984.—Decided June 29, 1984.*

(Also reported in 350 N.W.2d 668.)

For the petitioner the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the appellant there was a brief by *Thomas L. Miller* and *Brennan & Collins*, Milwaukee, and oral argument by *Mr. Miller.*

HEFFERNAN, C.J. This is a review of a decision of the court of appeals (*In the Interest of J.G.*, 114 Wis. 2d 217, 338 N.W.2d 508 (Ct. App 1983)), filed July 11, 1983, which reversed an order of the circuit court (children's court division) for Milwaukee county, Leander J. Foley, Circuit Judge, waiving jurisdiction over a juvenile and transmitting the case to the criminal jurisdiction of the circuit court. The court of appeals remanded the case to the children's court division for further hearing on the question of prosecutive merit under sec. 48.18(4), Stats., stating:

"[W]here the evidence consists almost entirely of confessions, this court holds that a hearing to determine the reliability of these confessions must be held before the issue of prosecutive merit is determined." At 222.

Because we conclude that the juvenile failed to make a showing that his confession was unreliable, but merely asserted in a conclusionary manner that the confession was involuntary, the court was not obligated to conduct a hearing. Accordingly, we reverse the decision of the court of appeals and direct that the cause be transferred to the adult court for trial in accordance with the waiver order of the children's court division of the circuit court.

J.G. was alleged to be delinquent in respect to numerous incidents. Three petitions to adjudge delinquency and, correspondingly, three petitions for waiver to the adult court were filed by the district attorney.

The controversy centers about the second petition filed, and issues raised in respect to the other two petitions are subsumed in the principal issue raised by the second petition.

The second delinquency petition accused J.G. of first degree murder and of arson. It was based on police reports of the investigation of the murder and arson scenes and, most importantly, on confessions given by J.G. on Sunday, January 16, 1983, at about 9 a.m., after J.G. had been called out of religious services for interrogation. J.G. had been in custody for ten days when the confession was given. He had an attorney appointed by the public defender who had been on the premises of the children's facility on a daily basis but was not there on Sunday. J.G. was given the appropriate *Miranda* admonitions and, then, pursuant to police interrogation, confessed to the murder.[1]

The accompanying petition for waiver of children's court jurisdiction recited that J.G. was seventeen years old. It described the murder and arson crimes with which he was charged, as well as stating the maximum penalties. It stated that, due to the nature of the alleged offenses, it was in the best interest of J.G. and the public that the children's court waive its jurisdiction.

A juvenile waiver hearing was held by the children's court. Defense counsel asked that testimony be taken before the judge made a determination on probable cause and prosecutive merit. At the hearing, held on February 9 and 11, 1983, counsel requested that the hearing be conducted in the same manner as an adult preliminary hearing and that, therefore, testimony should be taken.

The judge stated he needed to look only to the petitions themselves for the factors of reliability and the quality of the evidence and was not obligated to conduct an evidentiary hearing.[2]

---

[1] It is not asserted that a confession taken in violation of *Miranda* could not be used in determining prosecutve merit.

[2] The extremely liberal evidentiary guidelines applicable to waiver hearings under sec. 48.18, Stats., are set forth in sec. 48.299(4)(a), (b):

Particularly in respect to the second petition—murder and arson—defense counsel argued:

"I'm requesting that there be an evidentiary hearing separate from this to determine the reliability of the evidence prior to determining whether there is probable cause and prosecutive merit. . . ."

The court, relying on *In re Interest of T.R.B.*, 109 Wis. 2d 179, 325 N.W.2d 329 (1982), ruled that it could make its decision in respect to prosecutive merit on the basis of the petitions alone. The rejoinder of defense counsel was that, particularly in respect to the murder-arson petition, the reliability of that statement, because of the conditions under which the statement was taken, were seriously in doubt. He asserted that there was "a big cloud" over that confession.

He then recounted the circumstances under which the statement was taken. We have set them forth above. He again asserted that the reliability of the confession was in question, stating:

"Unreliability has to do with the involuntariness of a statement and among other things, involuntariness has to do with the question, I got an attorney, but of course, you're going to waive your attorney and talk to us because we're right here now, and we want some answers, and I think the Court needs to have those policemen on

---

"48.299 **Procedures at hearings**

"(4)(a) Chapters 901 to 911 shall govern the presentation of evidence at the fact-finding hearings under ss. 48.31 and 48.42.

"(b) Neither common law nor statutory rules of evidence are binding at a waiver hearing under s. 48.18 . . . . At those hearings, the court shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony. Hearsay evidence may be admitted if it has demonstrable circumstantial guarantees of trustworthiness. The court shall give effect to the rules of privilege recognized by law. The court shall apply the basic principles of relevancy, materiality and probative value to proof of all questions of fact. Objections to evidentiary offers and offers of proof of evidence not admitted may be made and shall be noted in the record.

the stand today or before this hearing proceeds any further to test the reliability, because I agree with the Court that those admissions are at the crux of what's going on here. . . ."

The circuit judge denied an evidentiary hearing and held there was prosecutive merit based on the contents of the delinquency petition and that there was "reliability within the quantity that is required for prosecutive merit."

He reached the same conclusion in respect to each of the petitions and then proceeded to the waiver hearing, in which evidence was taken. After the waiver hearing, the court made a specific finding that the state proved by clear and convincing evidence that J.G. had a personality defect, for which treatment in the juvenile system was limited. The case was ordered transferred to the criminal division of the circuit court. No question is raised in these proceedings in respect to the second stage waiver hearing. The objection is to the first stage hearing finding prosecutive merit on the basis of the involuntary confession incorporated in the delinquency petitions.

Appeal was discretionarily permitted by the court of appeals. A stay of the order waiving juvenile jurisdiction was entered, and the appeal was heard by the court of appeals, which reversed the circuit court's order and ordered a remand for a hearing on the reliability of the evidence proffered before the question of prosecutive merit is determined.

J.G.'s argument to the court of appeals was based upon *In re D.E.D.*, 101 Wis. 2d 193, 200–01, 304 N.W.2d 133 (Ct. App. 1981), which, in turn, relied upon *In re D.H.*, 76 Wis. 2d 286, 303, 251 N.W.2d 196 (1977), for the proposition that a finding of prosecutive merit must be supported by evidence that was "reliable."

*D.H.* did not attempt to define "reliable." Rather, it emphasized that what information or evidence was reliable was a matter of discretion, that "The juvenile court may inform itself in any manner it deems suitably

reliable . . . ." At 303. Also, it should be noted that the discussion in *D.H.* in respect to reliable evidence was focused on the waiver hearing, not on the facts that are determinative of prosecutive merit. At another point in *D.H.*, at 301, this court stated that the trial court should require that the information considered by it be "trustworthy." Again it appears that "trustworthy" was used in *D.H.* in the same way "reliable" was used, not as a word of art characterizing the precise nature of evidence, but rather as the type of evidence that a reasonable trial judge could consider in the exercise of discretion in waiving juvenile jurisdiction. The court in *D.H.* specifically disclaimed an intent to establish "a blanket requirement for formal proof." At 303. Nor, in respect to the waiver, did the court intend to require that "the prosecution must in some manner prove up, by competent evidence in the strict legal sense, some sort of prima facie case for waiver of jurisdiction." At 301.

The discretionary nature of the ultimate waiver decision was emphasized in *D.H.*, and the choice of evidence that the trial judge might consider was also clearly intended to be a discretionary matter. The test is not, under *D.H.*, the sufficiency of the evidence, but whether, under the facts, there was an abuse of discretion. *D.H.*'s discussion of the discretionary nature of evidence appropriate to a waiver hearing is consistent with the provisions of sec. 48.299 directing that a juvenile "court shall admit all testimony having reasonable probative value . . . ."

Thus, it would appear that the court of appeals took a position not justified by precedents of this court when it stated in *D.E.D.*, p. 201, n. 3, relying on *D.H.*, that:

"In deciding whether prosecutive merit exists and whether to waive jurisdiction, the juvenile court may consider reliable evidence which is allegedly illegally obtained but may not consider evidence which is demon-

strably unreliable, *such as a statement given to police or others under circumstances indicating it was given involuntarily.* Sec. 48.229 (4) (b), Stats.; *In interest of D.H.,* 76 Wis. 2d at 301, 251 N.W.2d at 204." (Emphasis supplied.)

Thus, the court of appeals in *D.E.D.* concluded that an involuntary confession was unreliable. It equated involuntariness with unreliability. It therefore would exclude as unreliable the involuntary confession, whether true or not, but would permit the use of a confession taken without *Miranda* admonitions.

In footnote 3 in *D.E.D.,* the court of appeals also relied upon 23 C.J.S., *Criminal Law,* sec. 817 (2) (a), pp. 164–65 (1961). However, when that citation to Corpus Juris Secundum is examined, it will be found to rely on *Lang v. State,* 178 Wis. 114, 189 N.W. 558 (1922), for the proposition that:

"The reason generally assigned for rejecting confessions induced by violence or threats, or hope of reward, is that such testimony is too unreliable to sustain convictions for crime." *Lang* at 123.

*Lang,* the Wisconsin case upon which C.J.S. relied, has been repudiated as being a correct statement of the reason for holding an involuntary confession *inadmissible* in evidence. This court has stated:

"The question of voluntariness is, of course, not directed to the trustworthiness of the statement and whether the statement is true and credible, but rather whether it was obtained under such circumstances that it represents the uncoerced, free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice." *Roney v. State,* 44 Wis. 2d 522, 532–33, 171 N.W.2d 400 (1969).

See, also, *State v. Bergenthal,* 47 Wis. 2d 668, 679, 178 N.W.2d 16 (1970), *cert. denied,* 402 U.S. 972 (1971);

*State v. Benoit,* 83 Wis. 2d 389, 403, 265 N.W.2d 298 (1978). When this court analyzes a confession to determine whether it is voluntary, " 'The question is whether it was obtained under such circumstances that it represents the uncoerced free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice.' " *State v. Wedgeworth,* 100 Wis. 2d 514, 524, 302 N.W.2d 810 (1981) ; *See,* also, *Norwood v. State,* 74 Wis. 2d 343, 364, 246 N.W.2d 801 (1976), *cert. denied,* 430 U.S. 949 (1977).

The United States Supreme Court said in *Jackson v. Denno,* 378 U.S. 368, 376 (1964) :

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is found, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers v. Richmond,* 365 U.S. 534, and even though there is ample evidence aside from the confession to support the conviction. *Malinski v. New York,* 324 U.S. 401; *Stroble v. California,* 343 U.S. 181; *Payne v. Arkansas,* 356 U.S. 560. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession."

The United States Supreme Court in *Rogers v. Richmond,* 365 U.S. 534 (1961), held that the reliability of a confession has nothing to do with its voluntariness. It stated involuntary confessions cannot be admitted in evidence "not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system . . . ." *Id.* at 540–41. *Rogers v. Richmond* noted that, in many cases where state convictions were overturned because the methods used to obtain the

confessions were involuntary, independent corroborating evidence left little doubt of the truth of what was confessed. Despite this verification of reliability, these confessions were found to be the product of constitutionally impermissible methods and were suppressed. As *Blackburn v. Alabama,* 361 U.S. 199, 206 (1960), said, "The Fourteenth Amendment forbids 'fundamental unfairness in the use of evidence, whether true or false.'"

Thus, it is clear that the court of appeals erred when it stated in footnote 3 of *D.E.D.* that a statement that is involuntary is demonstrably unreliable. It perpetuated that error when, in this case, it relied upon that footnote to assert that an involuntary confession was prima facie unreliable. We conclude that the legal underpinnings of the court of appeals decision in the instant case were faulty.

An involuntary statement is not for that reason unreliable. It is equally clear, then, that the court of appeals was incorrect when it stated:

"[W]here the evidence consists almost entirely of confessions, this court holds that a hearing to determine the reliability of those confessions must be held before the issue of prosecutive merit is determined." 114 Wis. 2d at 222.

The holding of the court of appeals is sweeping. It is broader than the facts of this case would require, for in the instant case there is at least the conclusionary statement that the confession was involuntary. If we read the court of appeals holding literally, all confessions—involuntary or not—must be tested in an evidentiary hearing for reliability before their contents can be considered by a juvenile court judge in the exercise of his discretion to determine prosecutive merit. We think this holding is incorrect; and even were we to limit it to the facts of this case, *i.e.,* where the evidence consists of

confessions claimed to be involuntary, the holding is also erroneous.

We have held in *In the Interest of P.A.K.*, released today, 119 Wis. 2d 871, 350 N.W.2d 677 (1984), that the provisions of the Childrens Code, ch. 48, do not require the state to present evidence in addition to that in the petition even when the issue of prosecutive merit is contested. We reiterated therein our holding in *In the Interest of T.R.B.*, 109 Wis. 2d 179, 325 N.W.2d 329 (1982), that, where the question of prosecutive merit was not contested, the finding could be based upon the evidence contained in the petition alone.

The instant case is similar to *P.A.K.* in that the reliance by the state is solely upon the petition for delinquency and the prosecutive merit is contested. It is unlike *P.A.K.*, because the contest in respect to prosecutive merit is based on the claim that the principal evidence is the confession of J.G., which it is asserted is unreliable because involuntary.

We have demonstrated that involuntariness is not to be equated with nonreliability or untrustworthiness. In fact, a confession is by definition reliable, for it is a special kind of an admission against interest. Thus, on its face it bears the indicia of reliability which, if nothing more were asserted, would afford some assurance for the appropriate use of a confession in determining prosecutive merit.

McCormick, *Evidence* (hornbook series, 1954), sec. 109, p. 225, contains an interesting discussion on the reliability and trustworthiness of confessions. It points out that the typical factors of unreliability of evidence, error in observation or memory, are substantially minimized in the case of a confession "since the narrator professes to have been himself the chief participant in the incident he recounts." *Id.* at 225.

While McCormick recognizes the possibility of false confessions, he points out:

"In ordinary circumstances a man will not acknowledge the commission of a crime carrying serious penalties, even if he is guilty, and this motive of self-protection will operate a hundred times more strongly to prevent his acknowledging a crime of which he is innocent." *Id.* at 226.

The real danger in respect to confessions, he points out, is the confession induced by duress, the involuntary confession; and, of course, that is why it is excluded from evidence at trial. McCormick points out, however:

"It may well be doubted whether confessions of guilt, even where they are extorted by pressure of force or fear, are not reasonably trustworthy." At 229.

They are excluded from use at trial for reasons of public policy, not because they are not trustworthy or not reliable. The juvenile code does, however, permit the use of any relevant, probative, and trustworthy evidence for the limited purpose of determining, not guilt or innocence, but the type of court which can best, from the viewpoint of society and the juvenile, act most appropriately in the circumstances. A confession, though involuntary on its face, is reliable in the sense that the information therein can, in the exercise of the court's discretion, be used to make a determination of prosecutive merit.[3]

McCormick, *Evidence* (hornbook series 2nd ed., 1972), sec. 146, p. 312, which discusses the rules which have increasingly restricted admissibility of coerced and involuntary confessions, states these rules have as "their primary purpose . . . the protection of interests other than the accurate resolution of factual issues presented by the case in which the confession is offered. Thus, they

---

[3] We, of course, do not suggest that an involuntary confession be admissible at trial. It may be used if reliable and trustworthy, despite its involuntariness, to determine prosecutive merit, and yet be excluded from admission in evidence at the criminal proceedings that follow a waiver of juvenile court jurisdiction.

may be properly classified as rules of privilege rather than of incompetency." Thus, the 1972 edition of McCormick, *Evidence,* continues to recognize that the prophylactic rules excluding coerced confessions at trial are not necessarily based upon the unreliability of the facts recited in those confessions.

It is apparent that some confessions which are involuntary may not be reliable, but it is not enough to assert that, because a confession is involuntary, even if that assertion is true, it is *ipso facto* not reliable. It is also possible that a voluntary confession may be unreliable in the sense that it is false or the product of mental illness.

Thus, we address the question which must be answered if this court is to give guidance to juvenile courts and to counsel in respect to what must be alleged to put in issue in the juvenile court the question of whether an involuntary confession is unreliable.

First, it should be emphasized that the burden is upon the juvenile to inform the court of the specific basis of unreliability of a confession. As we have pointed out, the allegation of involuntariness, or even its proof, is not necessarily relevant to reliability. *In the Interest of T.M.J.,* 110 Wis. 2d 7, 327 N.W.2d 198 (Ct. App. 1982), made it clear that, where confessions of the juvenile were included in the petition, the juvenile had not assumed his burden to secure a hearing on the question of reliability where he offered no specific grounds disputing reliability and did not claim his statements were untrue.[4]

4 The court of appeals intimated that, had there been an assertion that the statement was involuntary, that might have warranted a hearing. As we have demonstrated, that is not a correct statement of the law. The Children's Code makes it clear that inadmissible evidence, if informative and helpful in the exercise of the juvenile judge's discretion, is appropriate and can be used.

We agree with the position asserted by the state that, when a petition which contains a confession as a primary basis for establishing prosecutive merit appears reliable on its face, the juvenile court may find it to be reliable unless there is a *specific* allegation of unreliability by the juvenile. An allegation that a confession is involuntary which does not assert and offer proof that the confession is untruthful, and therefore not reliable, does not require the court to conduct an evidentiary hearing.

We do not agree with the defendant's position—that the prosecutive merit determination should be conducted in the same manner as a preliminary hearing—just because the court in *In the Interest of T.R.B.*, 109 Wis. 2d 179, 325 N.W.2d 329 (1982), held that prosecutive merit was functionally similar to a finding of probable cause in the course of a preliminary hearing and not similar to the determination of whether a complaint was sufficient. We held to the contrary in *P.A.K.* Pages 884, 885.

The state, of course, has the initial burden of providing evidence sufficient to justify the court's finding of prosecutive merit. *P.A.K., supra,* at pages 884, 885; *T.R.B., supra* at 190.

That initial showing of the state must include the evidence that has about it the indicia of reliability or trustworthiness, *e.g.*, petitioner's personal observations or other factors which demonstrate reliability. The court of appeals in *D.E.D.* defined "reliable" as trustworthy or worthy of confidence. *In the Interest of T.M.J.*, 110 Wis. 2d 7, 327 N.W.2d 198 (Ct. App., 1982). *See,* also, the court of appeals' discussion in *T.M.J., supra,* at 16–17. We do not, however, in this case feel that it is incumbent upon us to further define reliability. Our task in that respect is ended when we determine, as we have, that a confession is prima facie reliable because it is a confession. If it is allegedly not reliable because it is for

some reason false, it becomes the burden of the juvenile to make that specific assertion and to offer to prove the fact asserted. The juvenile, once the specific allegation is made, must be given the opportunity to demonstrate or prove the unreliability of the state's offered evidence. *D.E.D., supra,* at 193.[5]

It should be pointed out that the juvenile court, even without a specific assertion or offer of proof by the juvenile of unreliability, must demonstrate the proper exercise of discretion by making an evaluation of the state's evidence in respect to reliability, for only reliable evidence will sustain a finding of prosecutive merit. *See, D.E.D., supra.* Nevertheless, a hearing on the question of reliability is required only if there is a specific assertion of nonreliability, *i.e.,* for what reason is it not reliable. If such assertion is made, the juvenile, in accordance with *D.H.* and sec. 48.18(3)(b), Stats., which codified *D.H.,* "has the right to present testimony on his or her own behalf including expert testimony." *Accord, P.A.K., supra,* at 886.

Once the juvenile challenges the reliability of a confession upon which a petition for prosecutive merit is based and comes forward with some evidence, the state has the burden of showing by the preponderance of the evidence that the confession is reliable.

In the present case, applying the above propositions of law we deem applicable to prosecutive merit determinations, we conclude that, in respect to the two petitions for prosecutive merit that were not even challenged as being

---

[5] In *D.E.D.* the court of appeals made clear that a confession used in a hearing on prosecutive merit need only be reliable and pointed out that *admissibility* involved the application of the rules of evidence and constitutional restrictions. *D.E.D.,* 101 Wis. 2d 193, 200–01.

based on an involuntary confession, the only duty of the court was to evaluate the evidence, without the necessity of any hearing, to determine reliability. This the juvenile judge clearly did, and we uphold his exercise of discretion in respect to the petitions dated January 13, 1983, and February 9, 1983. He explicitly stated his reasons for finding the evidence in the two petitions reliable and of sufficient quantum to support a finding of prosecutive merit. We reverse the court of appeals in respect to its decision to reverse the juvenile court's finding of prosecutive merit as to those two petitions.

In respect to the petition of January 17, 1983, the second petition, which posed the question which we considered of such importance that we accepted the petition for review, we also reverse.

The juvenile court did not abuse its discretion when it refused to conduct a hearing on J.G.'s January 16, 1983, confession, because J.G. contended only that the confession was "involuntary" and did not even assert a reason why the confession was untrustworthy or unreliable. There was no contention that the confession was not a truthful one. An assertion, even though purporting to challenge reliability, that is specific only as to a claim of involuntariness does not furnish a predicate for demanding an evidentiary hearing.

To summarize, a juvenile court is under no obligation to conduct a hearing on the reliability of a confession in a petition, although it must always evaluate the evidence presented for its reliability. In the event there is a challenge by the juvenile, accompanied by a showing that his/her confession is unreliable, the juvenile court must set it aside and determine whether there remains sufficient content, other than in the disputed confession, in the petition upon which to make a finding of prosecutive merit. If the remaining content of the petition is not sufficient upon which to base a finding of prosecutive merit, the

juvenile court is obligated to conduct a hearing at which the state must come forward and prove, if possible, by the preponderance of the evidence, that the confession is reliable. If the state fails to meet this burden, because the juvenile court already determined there was not sufficient reliable information upon which to make a finding of prosecutive merit, the juvenile court may not find prosecutive merit and cannot proceed to the second stage of the waiver proceeding. If the juvenile court finds that the challenged confession is reliable, the waiver hearing may proceed, but the finding is not afforded *res judicata* effect and the juvenile is entitled to a hearing anew on the admissibility of the confession in the criminal court.

Although J.G.'s counsel objected in a conclusionary fashion to the confession's reliability, he did not make a preliminary showing that the confession was false. The juvenile court evaluated the reliability of the confession on the basis of the information in the petition, but it was not obligated to conduct a hearing on the reliability question. The juvenile court did not abuse its discretion in finding prosecutive merit. The court of appeals is reversed and the cause is remanded to the circuit court for further proceedings in accordance with the findings of the juvenile court and its waiver of juvenile court jurisdiction.

*By the Court.*—Decision reversed; cause remanded to the circuit court.

SHIRLEY S. ABRAHAMSON, J. (concurring). This case raises only the issue of prosecutive merit under sec. 48.18(4) Stats., not under sec. 48.18(5)(b).

I write to point out that the phrase prosecutive merit may be used in different senses in secs. 48.18(4) and 48.-18(5)(b). See *In the Interest of T.R.B.,* 109 Wis. 2d 179, 185–86, n 10, 11, 325 N.W.2d 329 (1982); State's Brief,

*In the Interest of P.A.K.*, case no. 83–176, at pp. 28–29, 119 Wis. 2d 871, 350 N.W.2d 677 (1984). The state may, in some cases, therefore have to produce different types of proof to make a showing of prosecutive merit under sec. 48.18(4) and under sec. 48.18(5)(b).

Under sec. 48.18(4) the circuit court determines whether it has jurisdiction to waive, and a finding of prosecutive merit is functionally similar to a finding of probable cause in the course of a preliminary hearing. Reliable information in the petitions may suffice.

Under sec. 48.18(5) the circuit court determines whether it should exercise its discretion to waive. The circuit court's consideration of prosecutive merit under subsection (5)(b), unlike under subsection (4), may include an evaluation of the state's chances of success in its prosecution of the crime upon which the waiver petition is based, including the likelihood of suppression of evidence. *Cf.* Youth Policy and Law Center, Inc., *Wisconsin Juvenile Court Practice in Delinquency and Status Offense Cases* sec. 9.11, p. 145 (Melli ed. 1978).*

---

* The Institute of Judicial Administration—American Bar Association Joint Commission on Juvenile Justice Standards concludes that "evidence which could not be the basis for an adjudication should not be the basis for waiver." *Standards Relating To Transfer Between Courts*, Commentary to sec. 2.2 B, pp. 38–39 (1980). See also Davis, *Legal and Procedural Issues Related to the Waiver Process*, in Academy for Contemporary Problems Project, Major Issues in Juvenile Justice Information and Training, *Readings in Public Policy*, pp. 235–36 (1981).