IN the INTEREST OF G.B.K., a Person under the Age of 18, G.B.K., Appellant,

v.

STATE of Wisconsin, Respondent.†

Court of Appeals

*No. 85–0126–LV.   Submitted on briefs May 31, 1985.—
Decided September 19, 1985.*
(Also reported in 376 N.W.2d 385.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the appellant the cause was submitted on the briefs of *Jack E. Schairer,* assistant state public defender, and *John E. Tradewell,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   G.B.K., who was charged with first degree murder, appeals from an order waiving juvenile court

jurisdiction.[1] The issues are: (1) whether the juvenile court made adequate findings on the availability of treatment options as required by sec. 48.18(5)(c), Stats; and (2) whether appellant's due process rights were violated by the court's refusal to determine, *in camera*, whether the state fully complied with discovery orders. Because the court made adequate findings and did not err in its refusal to conduct an *in camera* discovery enforcement proceeding, we affirm.

## I. WAIVER

Before juvenile court jurisdiction may be waived, it must appear, by clear and convincing evidence, that it would be contrary to the best interests of the child or the public for the case to remain in the juvenile system. Sec. 48.18(6), Stats. In making the waiver determination, the court must consider the several criteria listed in sec. 48.18(5).[2]

---

[1] Orders waiving juvenile court jurisdiction are not appealable by right because they are not "final orders" under sec. 808.03(1), Stats., or sec. 48.47, Stats. *State ex rel. A.E. v. Green Lake County Cir. Ct.*, 94 Wis. 2d 98, 105a, 292 N.W.2d 114, 114 (1980) (on motion for reconsideration). G.B.K. has petitioned for leave to appeal a nonfinal order, and we grant that petition. *See* sec. 808.03(2).

[2] Section 48.18(5), Stats., provides:
If prosecutive merit is found, the judge, after taking relevant testimony which the district attorney shall present and considering other relevant evidence, shall base its decision whether to waive jurisdiction on the following criteria:
(a) The personality and prior record of the child, including whether the child is mentally ill or developmentally disabled, whether the child has been previously found delinquent, whether such delinquency involved the infliction of serious bodily injury, the child's motives and attitudes, the child's physical and mental maturity, the child's pattern of living, prior offenses, prior treatment history and apparent potential for responding to future treatment.

Appellant argues first that the state has the burden to prove that there are no adequate alternatives to waiver in either the juvenile or mental health systems, and that before waiver may be ordered, the court must resolve every statutory waiver criterion against the child. The statute, however, requires neither. Section 48.18(6), Stats., requires only that the court consider the listed criteria and state its findings on the record. If the legislature had intended to require the submission of evidence to or specific findings by the court as to each individual factor, it would have used language designed to effect that purpose. *See In Interest of P.A.K.*, 119 Wis. 2d 871, 881–82, 350 N.W.2d 677, 683 (1984), where the court held that sec. 48.18, Stats., does not require the state to present evidence on all the listed waiver criteria, noting that if the legislature had so intended, it could easily have so stated. The statute does no more than direct the juvenile court to state on the record its findings with respect to the criteria actually considered.

The trial court met this requirement. It heard extensive testimony from a variety of professionals regarding available facilities and treatment options in the juvenile, criminal and mental health systems. In addition, two psychiatrists and a psychologist testified

(b) The type and seriousness of the offense, including whether it was against persons or property, the extent to which it was committed in a violent, aggressive, premeditated or wilful manner, and its prosecutive merit.

(c) The adequacy and suitability of facilities, services and procedures available for treatment of the child and protection of the public within the juvenile justice system, and, where applicable, the mental health system.

(d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in circuit court.

as to appellant's mental condition and his treatment needs. All concluded that a minimum of two years of treatment was necessary and that it was likely more would be needed. One was of the opinion that appellant would kill again unless successfully treated, and a second testified that there was an eighty to ninety-five percent possibility of failure in treatment options available in the mental health system. The third, Dr. Leigh Roberts, testified that appellant would need extensive aftercare once treatment was completed. Roberts felt that the twenty-six months remaining before the juvenile system lost jurisdiction over appellant because of his age (he was nearly seventeen years old at the time of the hearing) was too short a period of time to adequately treat his disorders and make him safe to himself and others.

After hearing evidence on these and other matters, the trial court referred to the statutory criteria and discussed the expert testimony bearing on the various factors, commenting on the thoroughness of the record in that regard. In the course of its seven-page discussion, the court found that appellant suffered from a borderline personality disorder and exhibited other symptoms of diminished self-control. The court stated: "The amount of time the defendant will be under juvenile jurisdiction is going to be an extremely short amount of time. And in listening to the mental health professionals that [sic] testified, I think that is just probably inadequate to cure the defendant or to place [him] in a situation where he would have the adequate internal controls to prevent difficulties. . . . I'm very pessimistic about his chances of being rehabilitated under any set of circumstances." The court concluded: "The facilities, services and procedures available for treatment of the child and protection of the public within the juvenile justice system are inadequate and unsuitable in view of the child's age, to-wit: 16 years,

and the nature of the present alleged delinquent offense."

Appellant focuses his argument on the fact that the juvenile court declined to allow him to invoke the commitment procedures of the Mental Health Act, ch. 51, Stats., as an alternative to waiver. On the fourth day of testimony at the waiver hearing, defense counsel submitted a petition for involuntary commitment for treatment under sec. 51.20, Stats., and an application for voluntary admission to an inpatient treatment facility under sec. 51.13. The trial court denied the applications.

Appellant contends that by suggesting involuntary (or voluntary) commitment he was "attempting to establish the availability of salient treatment options as alternatives to waiver." He maintains that the court's refusal to stay the waiver proceedings pending resolution of his commitment petitions somehow violated his right to due process—e.g., his right to be heard on the petitions. In support of his argument, appellant offers only a bare citation to *In re Barker*, 305 A.2d 211 (Md. Ct. Spec. App. 1973), a case that had nothing to do with constitutional claims. The trial court's refusal to allow appellant to file the petitions did not deprive him of his right to present evidence nor did it preclude the court from considering his mental health needs. We find no merit in the due process argument.

Appellant also contends that it was error to deny the petitions because Dr. Roberts' testimony established the availability and propriety of involuntary commitment under ch. 51, Stats., as a reasonable alternative to waiver. Our review of the record, however, indicates that, at most, Roberts speculated that appellant might barely or marginally fit the definition of mental illness required for placement under ch. 51. The efficacy of a ch. 51 commitment is inconclusive, at best. Moreover, even if appellant eventually might be found to meet the

standards for commitment, all the court could do would be to commit him to the custody of the 51.42 Board. The Board, not the court, determines actual placement. If the Board chooses a less restrictive placement—one that the court feels would not provide adequate protection for the public—the court has no power to override the Board's decision. *State v. Smith,* 106 Wis. 2d 151, 156–58, 316 N.W.2d 124, 126–27 (Ct. App. 1982). We note, too, that the Board alone has the discretion to release a patient at any time it deems appropriate. Sec. 51.20 (13) (g) 3, Stats.

While there may be cases where the juvenile court might properly consider commitment under ch. 51 as an alternative to waiver, there is insufficient evidence as to whether such a commitment would be available to appellant, much less whether it would offer adequate or suitable alternatives for "treatment of the child and protection of the public" as contemplated by sec. 48.18 (5) (c), Stats. The trial court did not err in refusing to stay the waiver hearing and accept the ch. 51 petitions.

Appellant next argues that the court gave undue weight to the seriousness of the offense in its assessment of the statutory criteria. The weight to be accorded each of the enumerated factors is discretionary with the trial court. *In re Interest of F.R.W. (a minor),* 61 Wis. 2d 193, 204, 212 N.W.2d 130, 135 (1973), *cert. denied,* 416 U.S. 974 (1974). We will not find an abuse of discretion if there is a reasonable basis for the court's determination. *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

That appellant allegedly committed a murder is certainly worthy of weight. The court considered other factors as well: appellant's past acts demonstrating a desire to kill or hurt; his past and continuing use of

weapons; his potential for committing other dangerous acts; and his mental condition and personality disorder. The court also concluded that rehabilitation would be unlikely in the juvenile system, given the limited time remaining before juvenile court jurisdiction would lapse. It is not an abuse of discretion for a court to waive jurisdiction after giving heavy weight to the severity of the offense and the short period of time left in the juvenile system. *State ex rel. TDD v. Racine County Cir. Court,* 91 Wis. 2d 231, 241, 280 N.W.2d 264, 269 (1979). The trial court did not abuse its discretion in evaluating the statutory criteria.

Appellant contends that before waiver is ordered, the court must make specific findings that: (1) his previous juvenile dispositions were "rehabilitatively ineffective" beyond a reasonable doubt; and (2) waiver is the "last resort." He has not persuaded us that the law requires such findings.

He next argues that the testimony of a probation officer seriously compromised his rights to due process and a fair waiver hearing. The officer testified that if a juvenile was found mentally incompetent to proceed under ch. 48, Stats., the juvenile proceedings would be dismissed and could not be reinstituted. Appellant claims this is not true and that the presence of such a misstatement in the record somehow prejudiced the court's decision. First, we have considerable difficulty conceiving how the opinion of a non-lawyer on an issue of statutory interpretation could unfairly prejudice an experienced trial judge. Second, sec. 48.295 (2), Stats., which outlines the procedures to be used when a child is not competent to proceed, is inconclusive on the question of whether juvenile proceedings must be dismissed upon a finding of incompetency. It is an open question, and appellant has offered no authority which would contradict the officer's characterization. In any event, the testimony could not have prejudiced appellant for his competency to proceed was never at issue in the case.

Appellant was required by the court to undergo a mental status examination, and he argues that the order forced him to give up privileges guaranteed by the fifth amendment to the United States Constitution. The argument is without merit. There is no evidence that appellant's statements to the examiners were used against him on any issue relating to his guilt. This was a waiver hearing, not a trial. Section 971.18, Stats., provides that any statement made by a person subjected to such examination is not admissible against him in a criminal proceeding on any issue *other* than mental condition, and that is the only issue addressed by the examination.

We conclude that the juvenile court did not abuse its discretion in waiving jurisdiction over appellant.

## II. *IN CAMERA* INSPECTION

Appellant argues that the trial court erred by failing to convene *in camera* proceedings to determine whether the state had complied with earlier discovery orders.

The juvenile court ordered the state to turn over to appellant all records and reports relating to the waiver criteria in sec. 48.18(5), Stats. Appellant then requested the court to examine *in camera* all police reports in the state's possession for the purpose of ascertaining the state's compliance with the court's order to disclose. The request was denied.

Juvenile waiver proceedings consider two primary questions: (1) whether the state's allegations show "prosecutive merit"; and (2) if so, whether juvenile court jurisdiction should be waived. The prosecutive merit stage is similar to a preliminary hearing in felony cases, and the defendant's discovery rights are strictly limited. *In Interest of T.M.J.*, 110 Wis. 2d 7, 12–14, 327 N.W.2d 198, 201–02 (Ct. App. 1982). In considering whether to waive jurisdiction, however, the juvenile court must consider, among other things, factors re-

lating to the defendant's personality and past history. Sec. 48.18(5), Stats. Section 48.293(2) allows inspection of social reports and records relating to the defendant, and such records are discoverable prior to the waiver hearing. *T.M.J.* at 14, 327 N.W.2d at 202. However, the defendant is not allowed discovery of materials related to the commission of the offense. *Id.*

Appellant has not suggested that there are police reports in existence which contain information relating to his "personality . . . motives and attitudes . . . physical and mental maturity . . . pattern of living . . . prior treatment history and apparent potential for responding to future treatment." Sec. 48.18(5), Stats. He argues only that he has an absolute right to an *in camera* judicial "determination . . . of the state's compliance with the court's orders." The juvenile court is a creature of statute and derives its jurisdiction and powers from the statutes. *State ex rel Koopman v. Waukesha Co. Ct. Judges,* 38 Wis. 2d 492, 497, 157 N.W. 2d 623, 626 (1968). While sec. 48.293, Stats., authorizes limited discovery, there is nothing in that section or any other part of the juvenile code supporting the position advanced by appellant. *State v. Outlaw,* 108 Wis. 2d 112, 321 N.W.2d 145 (1982), appellant's sole authority on the point, is inapposite. There the issue concerned the application of a special statutory procedure (which included producing evidence *in camera*) in cases where testimony is sought from confidential police informants. No similar procedure exists in the juvenile code.

■

We recognize that waiver proceedings are "critically important." *Kent v. United States,* 383 U.S. 541, 556 (1966). They determine whether a juvenile will be treated as a delinquent child or as an adult criminal defendant. *T.M.J.,* 110 Wis. 2d at 11, 327 N.W.2d at 201. We do not doubt that instances may arise in waiver

proceedings where *in camera* inspections to determine compliance with discovery orders may be appropriate. But we do not agree with appellant that there is an absolute right to such inspection upon request, without any showing or positive assertion that the discovery order is in fact being violated. On this record, the juvenile court did not abuse its discretion in declining to convene the *in camera* proceedings and leaving appellant to the remedies provided by law should it ultimately appear that the state violated the discovery order.

*By the Court.*—Order affirmed.

GARTZKE, P.J. (dissenting). Although I agree with the result on the information before the trial court, I would retain jurisdiction and remand to the court for an *in camera* inspection of the police reports and for reconsideration, if appropriate. Whether material in the reports is relevant to the sec. 48.18(5) waiver criteria is a matter of discretion and judgment. The prosecutor, the juvenile, and the court may have different views on whether material in the reports is relevant to the criteria. If the juvenile cannot have access to the report before the waiver hearing, the court should review the state's compliance with the court's order.

I would not condition the court's review on a showing or positive assertion that the discovery order is in fact being violated. Counsel for the juvenile can seldom know that such is the case. That inability is the very reason for the requested review.

To leave the juvenile to unspecified remedies should it ultimately appear that the prosecutor violated the discovery order is unsatisfactory. Once the trial court waives a juvenile into adult court, the juvenile's remedies are to petition for leave to appeal the waiver order or obtain review of the waiver order on an appeal from the conviction. *State ex rel. A.E. v. Green Lake County*

*Cir Ct.*, 94 Wis. 2d 98, 105a, 292 N.W.2d 114, 114 (1980) (on reconsideration) ; *State v. Lewandowski*, 122 Wis. 2d 759, 762, 364 N.W.2d 550, 552 (Ct. App. 1985).

The first alternative provides no remedy. A failure to comply with the order is unlikely to surface by the time the petition for leave is filed. Only if the juvenile is not waived into adult court can the juvenile obtain copies of the police reports as a matter of right. Sec. 48.293(1), Stats. The second alternative, appeal from the conviction, is also an unsatisfactory remedy. A defendant in adult court has no automatic right to police reports. Secs. 971.23 to 971.25, Stats. A failure to disclose may not come to light during the trial. Even if it does, the juvenile will have been put through criminal proceedings which might have been prevented had the trial court made an *in camera* inspection.

The inadequacy of these remedies weighs in favor of requiring an *in camera* inspection. If other remedies exist, we should weigh their value now.