166 Wis.2d 202 (1991)
479 N.W.2d 205
IN the INTEREST OF B.B., a child under the age of 18: B.B., Appellant,
v.
STATE of Wisconsin, Respondent.[]
No. 91-1740.
Court of Appeals of Wisconsin.
Submitted on briefs November 25, 1991.
Decided December 17, 1991.
*204 On behalf of the appellant, the cause was submitted on the briefs of Alex Andrea, assistant state public defender, of Hudson.
On behalf of the respondent, the cause was submitted on the brief of James E. Doyle, attorney general and Gregory M. Posner-Weber, assistant attorney general.
Before Cane, P.J., LaRocque and Myse, JJ.
CANE, P.J.
B.B., a sixteen-year-old juvenile, appeals a non-final order[1] waiving him into adult court to face charges alleging five counts of first-degree intentional *205 homicide, contrary to sec. 940.01, Stats.[2] He contends that the juvenile court unreasonably exercised its discretion by waiving him into adult court because it improperly weighed his best interests equally with the public's interests and because it did not consider the legislative amendment to the extended jurisdiction statute.
We conclude that the juvenile court gave paramount consideration to the best interests of B.B., and properly weighed those interests with the other factors under sec. 48.18(5), Stats., in reaching its conclusion to waive B.B. into adult court. We also hold that the extended jurisdiction statute, when properly considered by the juvenile court, does not preclude the juvenile court's discretionary determination to waive jurisdiction. The order is affirmed.
The state introduced the following facts as evidence to support its request for waiver. B.B. lived with his father, his father's live-in girlfriend (stepmother), two stepsisters and half-sister. B.B. informed his mother's stepson that he did not like his parents, his family or his living conditions. He also told the stepson that he wanted to get rid of his family and indicated that he was going to shoot and kill them.
After tying two of his sisters together, B.B. took them outside and shot each in the head. Additionally, he shot his father in the head and chest, his stepmother in the head and his other sister in the head. After the incident, B.B. called the stepson and told him that he had killed them and asked the stepson to help him move the bodies. B.B. also told the stepson that if B.B. was caught, "he wouldn't be in jail much because he was a *206 juvenile." The stepson and B.B. placed the bodies in a station wagon, scooped up the bloody sand where each of the bodies had lain on the ground, disposed of the bloody sand in a leaf pile, put the shovel in the vehicle and talked about burning the vehicle and bodies in order to destroy the evidence.
Thereafter, B.B. transported the bodies to an isolated area and the stepson followed in another car. The stepson and B.B. took the license plates off the vehicle carrying the bodies, doused the vehicle with gasoline and set it on fire. Days later, the two boys returned to the scene. At that time, B.B. put some of the skeletal remains of the bodies into a duffle bag that they later buried.
The investigation revealed that the vehicle license plates were missing, a marine gas tank was found behind the driver seat, the gas tank appeared to be dumped over and the cap was missing and bone fragments and teeth were found in the interior of the vehicle. The authorities also recovered the license plates and the duffle bag from the places where the stepson indicated those items were located.
B.B. received adequate grades in school, was able to comprehend and respond to questions and showed no indicia of mental disease or defect. He also showed no signs of remorse.
In opposition to the petition for waiver, B.B. offered the following evidence. B.B.'s father and stepmother physically and emotionally abused him, neglected him and psychologically isolated him. He was ashamed of his home life and hated living with his father. There was no love, no conversation and no respect. B.B. shot and killed his father, stepmother, two stepsisters and half-sister in an attempt to escape his dysfunctional familial *207 relationship and to alleviate a present and future source of pain and fear.
B.B. had a cooperative, polite and responsive personality, and he interacted well with his peers. He had no sociopathic tendencies or conduct disorders. B.B. had not been charged with or adjudicated for any other criminal activity. Furthermore, an expert testified that B.B. was amenable to treatment and unlikely to re-offend.
After hearing this evidence, the juvenile court considered the factors in sec. 48.18(5), Stats. It found that the seriousness of the offense factor favored waiver into adult court. However, it found that all other factors, including B.B.'s best interests, favored retaining juvenile jurisdiction. The juvenile court concluded that waiver of jurisdiction was in the public's best interests and, therefore, warranted.
[1]
"Waiver of jurisdiction under sec. 48.18, Stats., is within the sound discretion of the juvenile court." In re J.A.L., 162 Wis. 2d 940, 960, 471 N.W.2d 493, 501 (1991). We will uphold a discretionary determination if the record reflects that the juvenile court exercised its discretion and there was a reasonable basis for its decision. In re C.W., 142 Wis. 2d 763, 766, 419 N.W.2d 327, 328 (Ct. App. 1987). B.B. argues that the juvenile court unreasonably exercised its discretion by failing to give paramount consideration to B.B.'s best interests.
Section 48.01(2), Stats., states that "[t]he best interests of the child shall always be of paramount consideration, but the court shall also consider ... the interests of the public." Section 48.18, dealing specifically with waiver, states in part:
(5) ... the judge ... shall base its decision whether to waive jurisdiction on the following criteria:

*208 (a) The personality and prior record of the child . . ..
(b) The type and seriousness of the offense . . .. [and]
(c) The adequacy and suitability of facilities . . .. (6) After considering the criteria under sub. (5), the judge shall state his or her finding with respect to the criteria on the record, and, if the judge determines on the record that it is established by clear and convincing evidence that it would be contrary to the best interests of the child or of the public to hear the case, the judge shall enter an order waiving jurisdiction . . .. (Emphasis added.)[3]
[2]
B.B. contends that sec. 48.01, Stats., requiring a juvenile court to give paramount consideration to the child's best interests, compels the conclusion that the child cannot be waived into adult court once the juvenile court finds that the child's best interests are not served by waiver. We disagree and conclude that waiver was still within the juvenile court's discretion. Construction of a statute and its application to a set of facts is a question of law that we review de novo. Wilson v. Waukesha County, 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990).
Section 48.01, Stats., unambiguously requires a juvenile court to always give paramount consideration to the juvenile's best interests. "Paramount consideration" does not, however, mandate the juvenile court to conclude, as a matter of law, that the best interests of the *209 child will always outweigh the public's interests. Rather, the statute directs the juvenile court to give its chief concern or importance to the child's interests.
[3]
Furthermore, although the juvenile court is directed to give its primary or foremost weight to the child's interests, it has discretion in weighing all the factors under sec. 48.18(5), Stats., and in waiving a juvenile's into adult court because it is either in the juvenile's or the public's best interests under sec. 48.18(6). Thus, we conclude that waiving B.B. into adult court after the juvenile court found that B.B.'s best interests were not served by waiver was not error as a matter of law.
B.B. also argues that the trial court erred by weighing his best interests equally with the public's interests. The juvenile court made findings with respect to the criteria in sec. 48.18(5), Stats., and properly stated those findings in the record. It first recognized that the best interests of the child was a very important factor and was to be given paramount consideration. It concluded that retaining juvenile court jurisdiction was in B.B.'s best interests. However, the juvenile court also indicated that sec. 48.18 required it to consider other factors before making a final decision.
On all individual factors considered, except one, the juvenile court found in favor of retaining jurisdiction. With respect to the seriousness of the offense, it found in favor of waiver. The juvenile court held that, based on the seriousness of the offense, it was in the public's best interests to waive jurisdiction.
[4-6]
We have held that sec. 48.18, Stats., does not require a finding against the juvenile on every criterion before waiver is warranted. See In re G.B.K., 126 Wis. 2d 253, 256, 376 N.W.2d 385, 388 (Ct. App. 1985). Furthermore, *210 the juvenile court has discretion as to the weight it affords each of those criterion. J.A.L., 162 Wis. 2d at 960, 471 N.W.2d at 501. Section 48.18(6) expressly provides the juvenile court with authority to waive its jurisdiction if it appears by clear and convincing evidence that it would be contrary to the public's best interests for the child to remain in the juvenile system. Although in its analysis on whether to waive the child into adult court, the juvenile court begins with the child's best interests as its chief concern, it is still permitted after evaluating all these factors to conclude that the public's interests are best served by waiving its jurisdiction. Here, the court did not weigh the child's best interests equally with the public's best interests. Instead, it properly considered the child's best interests as paramount, but also considered the type and seriousness of the offense.
[7]
Based on the evidence and the applicable law, the juvenile court reasonably concluded that the type and seriousness of the offense greatly outweighed the other factors and B.B.'s best interests, and that waiver was in the best interests of the public. Thus, the juvenile court reasonably exercised its discretion by waiving B.B. into adult court.
B.B. also argues that the trial court erred by failing to consider the legislative amendment to the extended jurisdiction statute. We disagree. The amended extended jurisdiction statute provides in part:
If the person committed any crime specified under s. 940.01 ... is adjudged delinquent on that basis and is transferred to the legal custody of the department ... the court shall enter an order extending its jurisdiction . . ..

*211 (a) ... until the person reaches 25 years of age . . .. Section 48.366, Stats.
[8]
B.B. argues that the legislative intent of this statute requires the juvenile court to retain jurisdiction over some juveniles accused of first-degree intentional homicide. We agree. However, this statute does not nullify sec. 48.18, Stats., allowing the juvenile court, in its discretion, to waive jurisdiction over a juvenile charged with first-degree intentional homicide.
[9]
Also, the record indicates that the juvenile court was aware of and considered the extended jurisdiction statute when it considered the suitability of facilities under sec. 48.18(5)(c), Stats. Furthermore, the juvenile court found that there were facilities willing to treat B.B. at the juvenile level. However, as indicated earlier, this was one of many factors the juvenile court considered and weighed in determining whether to waive jurisdiction. Thus, the juvenile court considered the proper factors, gave those factors the weight that it deemed appropriate and reasonably concluded that waiver of jurisdiction was in the best interests of the public.
By the Court.Order affirmed.
NOTES
[] Petition to review denied.
[1] The petition for leave to appeal was granted July 24, 1991.
[2] Section 940.01(1) states in part that "whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony."
[3] Section 48.18(5) contains a fourth factor for the juvenile court to consider: the desirability of trying a case in one court if the juvenile was associated in the offense with other persons who will be charged in circuit court. However, that factor does not apply in this case.