COURT OF APPEALS
DECISION
DATED AND FILED

June 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP32**

Cir. Ct. No. 2023JV33

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

IN THE INTEREST OF M.P., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

M.P.,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge. *Affirmed*.

¶1    GROGAN, J.[1]  M.P. appeals from an interlocutory order[2] waiving him into adult court.  He contends the circuit court erroneously exercised its discretion when it found the State proved by clear and convincing evidence that M.P.—who was sixteen years and four months old at the time—should be tried in adult court instead of juvenile court.  This court affirms.

## I.  BACKGROUND

¶2    In November 2023, the State filed a Delinquency Petition charging M.P. with four counts:  (1) first-degree recklessly endangering safety, use of a dangerous weapon (WIS. STAT. §§ 941.30(1), 939.63(1)(b)); (2) endangering safety by reckless use of a firearm (WIS. STAT. § 941.20(2)(a)); (3) possession of a dangerous weapon by a person under eighteen (WIS. STAT. § 948.60(2)(a)); and (4) pointing a firearm at another (WIS. STAT. § 941.20(1)(c)).  The charges stemmed from an incident where M.P. and some friends went to the home of another juvenile male to resolve a dispute by physically fighting.  One of M.P.'s friends brought a handgun, and during the fight, M.P. asked the friend to load the handgun for him.  Witnesses told police that M.P. pointed the gun at the juvenile male who had started running back toward the house and fired multiple shots.  Although no one was hit, two bullets penetrated the house where multiple children (ages two to fifteen) were inside.

¶3    The State filed a motion seeking to waive M.P. from juvenile to adult court.  The motion stated that M.P. has had seven delinquency petitions filed

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  This court granted leave to appeal the order.  *See* WIS. STAT. RULE 809.50(3).

over the last several years, not including the current Petition, for the following: (1) criminal damage to property; (2) theft/criminal damage to property as party to a crime; (3) manufacturing/delivery of THC for possessing and selling marijuana; (4) possession of narcotics/possession of drug paraphernalia/obstruction involving two pills containing fentanyl; (5) burglary and operating a motor vehicle without owner's consent involving stealing a car; (6) possession of drug paraphernalia (a pipe used to smoke Percocet) and for possession of Percocet; and (7) battery, disorderly conduct, and violation of a nonsecure custody order.

¶4      The waiver motion alleged that waiver was appropriate because M.P.'s behavior was escalating and becoming more dangerous and that "the adult court system is better equippe[d] to provide the interventions necessary to provide for [M.P.'s] safety and the safety of the community."  The motion also addressed WIS. STAT. § 938.18's waiver criteria.  With respect to M.P.'s personality and past record, the State said:

> [M.P.] has an extensive juvenile record including multiple felony charges.  [M.P.] is a healthy 16 year old male.  There are no cognitive and developmental issues that the department has been made aware of.  [M.P.] has been oppositional and unwilling to follow his supervision rules, parent's rules, and the law.  He has run from the home, and is spending time with peers that are also engaged in delinquent behavior.  [M.P.] has been provided services for the past three years aimed at rehabilitation.  At this time, his attitude towards treatment, his rules, and what is expected of him is not being taken seriously.  He continues to violate the rules set forth for him and has a blatant disregard for the safety of others.

Regarding the seriousness of the charges, the State explained that "[t]he potential for significant harm or loss of life was extremely high, and at least two bullets penetrated the structure and could have caused harm or loss of life to anyone inside the building.  [M.P.] discharged the firearm and [physically] struck the

victim knowingly, and he has a history of violent behavior." And, as to whether the juvenile system had facilities and programs available that would properly serve M.P., the State noted:

> Given [M.P.'s] time on supervision, the dangerousness of his behavior, and the apparent inefficacy of programming and services provided to him through the juvenile court system, the juvenile system is no longer appropriate for [M.P.]. [M.P.] will turn 17 in 2024, and continues to disobey the law despite being on juvenile court supervision. He has been placed in secure detention multiple times, and has received charges while under home detention rules with electronic monitoring.

¶5 At the waiver hearing, Sergeant Chad Riddle of the Appleton Police Department testified about the investigation into the incident, including the witness statements regarding M.P. having pointed a gun at a juvenile female, asking his friend to load the gun, and shooting it in the direction of the juvenile male who was running toward his house.

¶6 Social Worker Jason Halbach of the Brown County Health and Human Services Department also testified. Halbach testified that he was M.P.'s case worker and explained that this was not M.P.'s first contact with the juvenile justice system. According to Halbach, M.P. had previously been on a delinquency petition for one year in 2020 for criminal damage to property and theft of movable property and confirmed that M.P. had also been on a separate petition "relating to manufacture or delivery of THC in '20[.]" M.P. lived in Green Bay (Brown County) with his father at the time of those events, and as a result of the 2020 delinquency petitions, the Brown County Health and Human Services Department connected M.P. with a mentoring program called Advocates for Healthy Transitional Living, which provided group sessions once or twice a week to work "on errors in thinking." Halbach testified that M.P. participated in the program "at

times[,]" but that at other times "he was withdrawing from … wanting to be a part of it."

¶7     Next, Halbach testified about a June 2022 delinquency petition for burglary (a felony) and operating a motor vehicle without the owner's consent, which resulted in a deferred prosecution agreement (DPA). As a part of the DPA, M.P. was to move to Wausau and live with his father's ex-wife because she had a background in counseling and would assist in obtaining services for M.P. in the Wausau area. The apparent rationale behind this plan was that it would be beneficial to remove M.P. from the negative peer group in Green Bay.

¶8     M.P. appeared to be doing well in Wausau from September 2022 to November 2022. However, the DPA was revoked in December 2022 after M.P. was found to be in possession of narcotics. M.P. subsequently returned to Green Bay, and as a result of the drug possession, he was "placed at Brown County Secure Detention and then later placed at Brown County Shelter Care under electronic monitoring."

¶9     While at the Brown County Shelter Care, M.P. slapped or hit a staff member, which resulted in M.P. returning to juvenile court. The disposition following that event resulted in a joint custody placement with his father and grandmother. He was on electronic monitoring during this timeframe. M.P. went to live with his grandmother in Neenah with the hope that removing him from the Green Bay area would help him stop breaking the law. Halbach testified that things seemed to be going relatively well—despite one incident that was resolved with the help of the school liaison officer—and that M.P. struggles with "getting up at times for school," but that M.P. was otherwise doing well until the incident underlying this case. Halbach also acknowledged that M.P. was taking medication

for ADHD, but did not need special education classes and was not aware whether he had been under an IEP (individualized education plan).[3] According to Halbach, M.P. was working in addition to going to school, and he was also aware that M.P. had been using marijuana.

¶10 When asked about the appropriateness of the juvenile system in addressing the most recent allegations against M.P., Halbach expressed concerns given the seriousness of the counts and the fact that less than two years remained before M.P. would turn eighteen  He explained that although this somewhat limited timeframe might be sufficient, because of M.P.'s repeated pattern of choosing negative influences, he would have recommended waiver to adult court had this case been heard in Brown County, where Halbach had been M.P.'s case worker.  Halbach said the approximate year and a half that would be available for M.P. if he remains in the juvenile system might be sufficient if M.P. cooperated, but ultimately, Halbach opined that this was not enough time to address the safety needs of the community.

¶11 Halbach further testified that the typical alternate correctional placement facilities available to juveniles such as Rawhide or Homme Home were unlikely options for M.P. because he did not believe those resources/programs were likely to admit M.P. into their respective programs given the severity of the

---

[3] M.P. states in his brief that he had been on an IEP, which his attorney also alluded to at the hearing.

charges in this case.[4]  Moreover, when asked if M.P., based on Halbach's training, experience, and knowledge of M.P., could "be safely supervised in the community" "at this point," Halbach responded "No."

¶12    After hearing closing arguments, the circuit court identified the pertinent facts and engaged in a careful and thoughtful analysis of how those facts fit within WIS. STAT. § 938.18(5)'s statutory factors.  The court seemed bothered and concerned that Brown County had twice sent M.P. to other communities as its only apparent solution to M.P.'s unlawful acts and noted that some of the statutory factors therefore favored keeping M.P. in the juvenile court.  However, the court also found that the "two biggest" factors—"the extreme seriousness of the offense" and the short length of time before M.P. turned eighteen—outweighed any of the factors that favored keeping M.P. in the juvenile court.  Accordingly, it determined that it was in both M.P.'s and the public's best interest to waive M.P. into adult court.  M.P. appeals.

## II. DISCUSSION

¶13    "WISCONSIN STAT. § 938.18 governs waiver of juvenile court jurisdiction." *State v. X.S.*, 2022 WI 49, ¶25, 402 Wis. 2d 481, 976 N.W.2d 425.  Appellate courts review the circuit court's decision on juvenile waiver under the erroneous exercise of discretion standard, and this court will uphold the circuit

---

[4] Although Halbach testified during his direct testimony that he did not believe such resources would be available to M.P. if M.P. remained in the juvenile system, on cross-examination and re-direct, he elaborated that whether or not M.P. would qualify for such programs would ultimately depend upon the screening process and that he could not definitively say whether M.P. would be accepted without M.P. having been screened.  He further confirmed that if M.P. was initially placed at Lincoln Hills, it was possible that he could be transferred to one of the aforementioned facilities at a later point.

court's waiver decision if it considered the pertinent facts, applied § 938.18, and reached a reasonable determination. *X.S.*, 402 Wis. 2d 481, ¶25. This court reviews the circuit court Record to determine whether the circuit court exercised discretion, and if it did, this court looks for reasons to uphold the discretionary decision. *Id.* An appellant bears the burden on appeal to show that the circuit court erred. *Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381.

¶14 As noted above, WIS. STAT. § 938.18 sets forth the requirements and procedures a circuit court must follow in deciding a motion seeking to waive a juvenile into adult court and provides for a two-step process. First, the circuit court must determine whether there is prosecutive merit. Sec. 938.18(4). M.P. does not dispute that there was prosecutive merit, and therefore this court need not address the first step. Second, the circuit court determines whether the juvenile should be waived into adult court by considering the specific criteria listed in § 938.18(5), which identifies the following five factors the circuit court must consider in determining whether waiver is appropriate:

> **(a)** The personality of the juvenile, including whether the juvenile has a mental illness or developmental disability, the juvenile's physical and mental maturity, and the juvenile's pattern of living, prior treatment history, and apparent potential for responding to future treatment.

> **(am)** The prior record of the juvenile, including whether the court has previously waived its jurisdiction over the juvenile, whether the juvenile has been previously convicted following a waiver of the court's jurisdiction or has been previously found delinquent, whether such conviction or delinquency involved the infliction of serious bodily injury, the juvenile's motives and attitudes, and the juvenile's prior offenses.

> **(b)** The type and seriousness of the offense, including whether it was against persons or property and the extent to

which it was committed in a violent, aggressive, premeditated or willful manner.

(c) The adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, where applicable, the mental health system and the suitability of the juvenile for placement in the serious juvenile offender program under s. 938.538 or the adult intensive sanctions program under s. 301.048.

(d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in the court of criminal jurisdiction.

¶15     In analyzing the statutory factors, the circuit court addressed all but the fifth factor, which M.P. agrees does not apply here.  As to the remaining factors, the court determined that although several factors weighed in favor of M.P. remaining in juvenile court, both M.P.'s age and the seriousness of the offense weighed in favor of waiver into adult court.  M.P. concedes that the seriousness of the crime factor favors waiver to adult court, but contends that none of the other factors do.  Thus, he argues that the circuit court erroneously exercised its discretion both in failing to properly explain why M.P.'s age favored waiver and in concluding that the only other factor supporting waiver—seriousness of the crime—outweighed all other factors in his case.

¶16     Having reviewed the Record, it is clear that the circuit court struggled with its decision given that the services M.P. had received through Brown County were seemingly incomplete.  However, in discussing the seriousness of the crime, the court recognized that M.P.'s actions in this case were an escalation of his prior juvenile criminal activity, and it gave significant weight to M.P.'s having intentionally fired a gun without regard for the potentially deadly consequences of his actions—particularly given the presence of young children in

the line of fire. Specifically, the court described M.P.'s crimes as "[e]xtremely serious, extremely dangerous," noting that "somebody could be dead" because of M.P.'s actions, and found that M.P.'s actions were premeditated, willful acts given that he had intentionally gone to the victim's home to engage in a physical fight and chose to use a gun during that interaction. The court also observed that M.P. made poor friend choices despite being moved out of Green Bay twice, noting that M.P. "seems to be able to find those individuals at the bottom of the barrel no matter where you place him," that M.P. had "school attendance issues," and that he was considered a runaway at one point.

¶17 The circuit court was also troubled by M.P.'s inability to abide with the law despite his prior delinquency petitions and the repeated opportunities he was given and further noted that when M.P. was on the DPA for burglary and operating a motor vehicle without owner's consent, the DPA was ultimately revoked. The court also expressed concern about the short length of time remaining for juvenile court jurisdiction due to M.P.'s age and questioned whether, under the circumstances and in light of the seriousness of the alleged crime, that the approximate one year and eight months available prior to M.P. turning eighteen would be sufficient to rehabilitate M.P. and keep the public safe.

¶18 At the same time, the circuit court acknowledged there were some services in the juvenile system available to M.P.—including "education, mental health resources, and family therapy." And, it noted that M.P. had not yet been provided AODA (alcohol and other drug abuse) treatment, that he had not "had a mental illness screening," and that he "has never refused treatment." The court also recognized that M.P. had some success in the juvenile system—"he's responded to treatment in the past," he had not been waived into adult court previously, and he has "no prior criminal convictions." In addressing the types of

facilities and services that would be available to M.P. if he remained in the juvenile system as opposed to the adult system, the court both questioned the quality of the services available—particularly those available in Brown County, which the court commented had done "such a poor job that we can't count on them to protect the community"—and acknowledged that the juvenile system's resources had not yet been fully exhausted.

¶19     Ultimately, after analyzing all of the factors, the circuit court concluded that "the juvenile system has just absolutely failed," but that despite the factors "that would seem to suggest retention in the juvenile system" is appropriate, given the seriousness of the offenses and the short time left before M.P. turns eighteen, it is in both M.P.'s and the public's best interest to waive him into adult court.[5]

¶20     Based on its analysis, and consistent with WIS. STAT. § 938.18(6), the circuit court stated its finding that the State had met its burden of proving "that it would be contrary to the best interest of the juvenile and the public to hear the case in the juvenile court."[6]

---

[5] The circuit court made one confusing statement that it clarified almost immediately. Specifically, the court first said:  "And while the juvenile system has just absolutely failed on the extreme seriousness of the offense just cannot outweigh all of the other factors that would seem to suggest retention in the juvenile system to be appropriate."  However, the court followed up by explaining that it was granting the waiver because of the "extreme seriousness of the offense and the little time that's available in the juvenile system[.]"  It is therefore clear that the court found that these two factors outweighed the factors that favored remaining in the juvenile system, and this court therefore concludes the circuit court's confusing statement was simply a misstatement.

[6] WISCONSIN STAT. § 938.18(6) provides:

(continued)

11

¶21　M.P. raises several arguments in attempting to establish that the circuit court erroneously exercised its discretion in waiving him to adult court. Specifically, M.P. asserts that "the circuit court lacked the factual record necessary to support its waiver ruling" as "there were significant holes in the evidence the State offered to support its waiver petition[.]"　M.P., however, did not make this argument in the circuit court, and it therefore did not have an opportunity to specifically address any purported deficiency.　Because M.P. failed to raise this in the circuit court, this court will not address this argument further.　*See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476 (argument forfeited because appellant failed to fully develop this argument before the circuit court).

¶22　M.P. next argues that the circuit court's decision was unreasonable because two criteria should not outweigh all other factors favoring retention in juvenile court, particularly given the purpose of the juvenile system and the fact that M.P. has potential to be rehabilitated.　This court is not persuaded.　First, the weight to be given to the various factors is left to the circuit court's discretion. *G.B.K. v. State*, 126 Wis. 2d 253, 259, 376 N.W.2d 385 (Ct. App. 1985).　Second, the analysis does not require a straight-up counting of factors—in other words, whether waiver is appropriate is not dependent solely on the number of factors that

---

> After considering the criteria under sub. (5), the court shall state its finding with respect to the criteria on the record, and, if the court determines on the record that there is clear and convincing evidence that it is contrary to the best interests of the juvenile or of the public to hear the case, the court shall enter an order waiving jurisdiction and referring the matter to the district attorney for appropriate proceedings in the court of criminal jurisdiction.　After the order, the court of criminal jurisdiction has exclusive jurisdiction.

favor waiver versus the number of factors that do not  As is evident from the Record, the circuit court engaged in a careful and thoughtful analysis of what was in M.P.'s and the public's best interest under the facts of this case and noted its reliance on two cases—*G.B.K.*, 126 Wis. 2d 253, and *B.B. v. State*, 166 Wis. 2d 202, 479 N.W.2d 205 (Ct. App. 1991)—in making its determination.

¶23    In *G.B.K.*, we upheld a circuit court waiver decision where the circuit court assigned great weight to the seriousness of the offense because the weight to be assigned the statutory factors is left to the circuit court's discretion. *Id.*, 126 Wis. 2d at 259.  In *B.B.*, the only statutory factor that favored waiver to adult court was the seriousness of the offense, but we still concluded the circuit court did not err in ordering waiver to adult court.  *Id.*, 166 Wis. 2d at 209.  Here, the seriousness of the offense and the short time left for juvenile jurisdiction were significant to the circuit court in its analysis, and, as a result, it afforded greater weight to these factors than the others because it recognized that time was running out for M.P. in the juvenile court and that the seriousness of his offenses had escalated.  A reasonable basis therefore supports the circuit court's decision to weigh these factors more heavily.

¶24    Finally, M.P. contends the circuit court did not adequately explain why his age mattered in determining that waiver was appropriate.  This court disagrees.  A juvenile's age will likely always matter in that as a juvenile approaches the age of eighteen, the less time the juvenile will remain within the juvenile court's jurisdiction.  Although the court here could have perhaps stated this more explicitly, the relevance and importance of M.P.'s age is rather obvious and can be readily inferred from what the court *did* say given the testimony at the waiver hearing.  Specifically, at the time of the hearing, the court noted that M.P. had one year and eight months before his eighteenth birthday.  Although Halbach

testified somewhat inconsistently as to whether this limited timeframe would be sufficient to rehabilitate M.P. and keep the community safe, given the escalation of M.P.'s actions—particularly after having already been on multiple prior petitions and having been given multiple chances to conform his conduct over a three-to-four-year period and having failed to do so—it was reasonable for the court to ultimately conclude that the time remaining before M.P. aged out of juvenile jurisdiction was insufficient to address his serious needs and the risks to the public. This is particularly so given that, as the court noted, M.P.'s offenses were escalating from nonviolent crimes to extremely violent ones and that M.P., in engaging in such dangerous actions, did not show any regard or concern for the lives of others.

¶25 Based on the foregoing, this court concludes that the Record reflects that the circuit court properly considered the relevant statutory factors, assigned greater weight to the factors it saw as the most significant under the facts of this case, applied the proper law, and expressed its reasons for concluding that M.P. should be waived into adult court. It clearly exercised its discretion, and it had a reasonable basis for its discretionary decision. Therefore, M.P. has failed to satisfy his burden of establishing that the circuit court erroneously exercised its discretion in granting the waiver motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

14